UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ADAM HUBACZ,                          :
                                      :
         Plaintiff,                   :
                                      :
    v.                                :    Case No. 2:12-cv-39
                                      :
THE VILLAGE OF WATERBURY,             :
VERMONT,                              :
                                      :
         Defendant.                   :


**<u>OPINION AND ORDER</u>**

This action arises out of Plaintiff Adam Hubacz's
termination from his employment as a police officer for the
Village of Waterbury, Vermont (the "Village").  Several of
Hubacz's initial claims have been dismissed by virtue of either
this Court's rulings or stipulation of the parties.  His
remaining claims consist of an appeal, brought pursuant to
Vermont Rule of Civil Procedure 75, of the Village's termination
decision, and his allegation that the Village violated his
procedural due process rights.  Now pending are the parties'
cross-motions for summary judgment.  ECF 56, 64.

For the reasons set forth below, the Village's motion for
summary judgment is GRANTED as to Hubacz's due process claim, and
DENIED with respect his Rule 75 appeal.  Hubacz's cross-motion
for summary judgment on the Rule 75 appeal is GRANTED, and this
case is REMANDED to the Trustees of the Village of Waterbury for
further proceedings.

**BACKGROUND**

Hubacz began working as a police officer with the Village of Waterbury Police Department ("WPD") on a part-time basis in February 2009.  He worked full-time between May 2009 and his termination on January 27, 2012.  During his tenure with the WPD, Hubacz's duties included responding to accident scenes; investigating motor vehicle collisions; collecting and analyzing physical evidence; managing criminal investigations; and providing sworn testimony during civil and criminal court proceedings.  It is undisputed that prior to his termination, he had a good reputation within the community and the WPD.

In September 2011, Washington County State's Attorney Thomas Kelly informed Hubacz that his cases would no longer be prosecuted.  Hubacz and his attorney tried to persuade Kelly to change his mind, but were unsuccessful.  In early October 2011, WPD Chief Joby Feccia became aware of Kelly's decision, and subsequently told Village Manager William Shepeluk of the situation.  Chief Feccia and Shepeluk met with Hubacz, who confirmed that State's Attorney Kelly would not prosecute his cases.

In a letter dated January 9, 2012, Shepeluk informed Hubacz that he and Chief Feccia were recommending to the Village Trustees that Hubacz's employment as a police officer be terminated.  Shepeluk stated in the letter that "[m]y

2

recommendation is based on the decision of the Washington County State's Attorney, Thomas Kelly, not to accept new cases from you for prosecution.  In light of that decision we conclude that you can no longer function effectively as a police officer for the Village of Waterbury."  ECF 56-6 at 2.  Shepeluk further informed Hubacz that the recommendation would be considered at an upcoming meeting of the Village Trustees, and that Hubacz had "a right to attend the hearing, with counsel of your choice and provided at your own expense, and to be heard on the charge and/or the recommendation that your employment be terminated."  *Id.*  The letter did not mention any facts or allegations underlying Kelly's decision.

The "Re" line at the top of Shepeluk's letter indicated that the hearing would occur pursuant to Vt. Stat. Ann. Tit. 24, § 1932, *et seq.*  Section 1932 provides, in relevant part, that: "[w]henever it appears to the appointing authority by its own knowledge or when informed by a written petition . . . that any regular [police] officer has become negligent or derelict in the officer's official duty, or is guilty of conduct unbecoming an officer," the "appointing authority" shall provide notice and a hearing before the applicable "legislative body."  *Id.* at § 1932(a).  If, after considering all of the evidence presented, the legislative body finds "that the officer is guilty of the charges as offered," it may remove or suspend the officer by

majority vote.  *Id.*

The hearing before the Village Trustees took place on January 24, 2012.  Hubacz and the Village were both represented by counsel.  The Trustees had counsel present as well.  The Village's counsel called Hubacz to testify first, followed by Chief Feccia and Shepeluk.  Hubacz's attorney cross-examined Chief Feccia and Shepeluk, but did not present any direct evidence.  By stipulation of the parties, the sole basis for the request for termination was Kelly's decision to cease prosecuting Hubacz's cases.  Accordingly, no other reasons for termination were offered at the hearing.

While the hearing was still in session, Hubacz's attorney distributed to the Trustees an eight-page motion to dismiss the charges.  The motion to dismiss argued that the proceeding failed to comply with Section § 1932 in three respects: first, that the notice of hearing failed to allege negligence, dereliction of duty, or conduct unbecoming an officer; second, that the charges were not based upon Shepeluk's own knowledge and did not constitute a written petition; and third, that the Village should not allow the State's Attorney to make personnel decisions for its police department.  After hearing arguments from counsel, the Village Trustees took the motion under advisement and closed the evidentiary record.

On January 27, 2012, the Village Trustees issued a thirteen-

4

page decision terminating Hubacz's employment "based on the decision by Washington County State's Attorney Thomas Kelly not to prosecute anymore [sic] cases from or involving Officer Hubacz and the resulting inability of Officer Hubacz to participate in most, if not all, of his law enforcement duties."  ECF 56-5 at 1. The Trustees' ruling found, in part, that:

> [a]s a police officer, Officer Hubacz is expected to take calls, manage accident and crime scenes, investigate incidents, collect evidence, and prepare cases for prosecution.  Officer Hubacz's presence or involvement in any of these tasks would jeopardize the investigation as State's Attorney Kelly would refuse to prosecute any such case.  In such instances, crimes would go unprosecuted and the law would be left unenforced.

*Id.* at 5.  Based upon testimony from Chief Feccia and Shepeluk, the Trustees found "credible and substantial" evidence that the situation would result in a misuse of taxpayer funds, as the WPD had only four full-time police officer positions, and would harm the department's reputation.  *Id.*  The Trustees also noted that, according to Chief Feccia's testimony, Hubacz "was a good and diligent officer in that he fulfilled his duties, was community-minded, showed an aptitude for police work, and an interest in learning more."  *Id.* at 3.

Based upon their factual findings, the Trustees concluded that Hubacz's inability to contribute to the prosecution of cases rendered him negligent and derelict in his duties.  *Id.* at 8. They also concluded that "[t]his situation triggers the standard

of conduct unbecoming an officer." *Id.* at 9.  Reasoning that conduct "unbecoming an officer" encompasses acts that "destroy public respect for police officers and confidence in the operation of the police department," *id.* (citation and internal quotation marks omitted), the Trustees determined that Hubacz's "inability to participate in his police work" would have precisely those impacts.  *Id.*  The Trustees further concluded that "[u]nder Vermont law, Section 1932 is the only mechanism for a town or village to dismiss a police officer who cannot function but will not resign," and declined to interpret Section 1932 as "only allow[ing] dismissal for willful misconduct or the higher standard advocated by Officer Hubacz."  *Id.* at 9-10.

The Trustees rejected Hubacz's notice arguments, concluding that Shepeluk had actual knowledge of the State's Attorney's decision.  The Trustees also rejected Hubacz's assertion that termination on the basis of Kelly's decision would essentially permit prosecutors to determine who may serve as police officers, finding that "[t]his position appears to be more of a policy consideration than a legal argument," and that Hubacz's case was an isolated incident.  *Id.* at 12.

The Trustees thus ordered that Hubacz be terminated, effective immediately, and notified him of his right to appeal within thirty days as allowed under Vt. R. Civ. P. 75.  Their decision issued on January 27, 2012.  Hubacz filed his Complaint

6

in this Court on February 27, 2012.

DISCUSSION

## I.   Legal Standard

As noted above, two issues remain in the case: Hubacz's Rule 75 appeal and his claim that the Village denied him due process. The Village has moved for summary judgment on those claims. Hubacz has cross-moved for summary judgment on the Rule 75 appeal, and opposes the Village's motion for summary judgment with respect to his due process claim.[1]

Federal Rule of Civil Procedure 56 allows the Court to enter summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).

In considering summary judgment, the Court construes the evidence "in the light most favorable to the nonmoving party, and draw[s] all inferences and resolv[es] all ambiguities in favor of the nonmoving party." *Doro v. Sheet Metal Workers' Int'l Ass'n*,

---

[1]  At oral argument, Hubacz argued that this Court could nonetheless order summary judgment in his favor on the due process claim.

498 F.3d 152, 155 (2d Cir. 2007).  "When both sides have moved for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011).

## II.  Due Process Claim

Under the Fourteenth Amendment, "[n]o State shall . . . deprive any person of . . . property, without due process of law."  U.S. Constit. amend XIV, § 1.  There is no dispute that Hubacz had a property interest in his employment with the WPD. *See* Vt. Stat. Ann. tit. 24, § 1931(a)(police officers "shall hold office during good behavior, unless sooner removed for cause"); *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) (noting that public employees terminable only for cause have a "constitutionally protected property interest in their tenure"). Accordingly, the Village was required to provide him "notice and opportunity for a hearing." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

### A.   Notice

With respect to notice, "due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226 (2006)

8

(quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14 (1978) (notice must "apprise the affected individual of, and permit adequate preparation for, an impending 'hearing'"). Such notice must include the charges being levied against the employee. *Loudermill*, 470 U.S. at 546.

Here, notice was provided in Shepeluk's letter dated January 9, 2012. The "Re" line on the letter stated that it was providing "Notice" of three events: (1) Hubacz's placement on paid administrative leave; (2) the leveling of "Charges and Recommendation for Termination"; and (3) that a hearing would occur pursuant to "24 V.S.A. § 1932, *et seq.*" ECF 56-6 at 2. The body of the letter explained that Shepeluk and Chief Feccia were recommending termination based upon the State's Attorney's decision to refuse Hubacz's cases. The letter also informed Hubacz of the date and time of the hearing, and of his right to be represented by counsel and heard "on the charge and/or the recommendation that your employment be terminated." *Id.*

Hubacz argues that Shepeluk's letter was deficient because it did not cite negligence, dereliction of duty, or conduct unbecoming an officer——the three grounds for termination set forth at Section 1932(a). Although Shepeluk's letter did not quote from Section 1932, it cited the statute and gave notice that a hearing would be held pursuant thereto. Furthermore,

9

Shepeluk charged Hubacz with being unable to "function effectively as a police officer for the Village of Waterbury." ECF 56-6 at 2.  The Trustees' "Final Conclusions" echoed this assertion, finding that because of Kelly's decision, Hubacz was "unable to perform his current job as a police officer . . . [or] any officer position within the Department."  ECF 56-5 at 12. Based upon that finding, the Trustees concluded that the grounds for termination set forth at Section 1932 had been satisfied.

Given these undisputed facts, the Court finds that notice in this case was constitutionally sufficient.  Shepeluk's letter stated the grounds for the termination recommendation, and provided notice of the statute under which the Village would proceed.  That the letter characterized the charge against Hubacz as an inability to perform his job, rather than citing specific statutory language, did not render the notice constitutionally inadequate.

### B.  Hearing

Hubacz also argues that he was denied sufficient pre- and post-termination remedies.  His pre-termination claim is premised upon his notice argument—that the hearing was inadequate because he was not properly notified of the charges being brought.  ECF 64 at 21.  Hubacz further contends that his post-termination remedy under Rule 75 falls short of satisfying due process requirements.

"Due process requires only that a hearing be held at a meaningful time and in a meaningful manner." *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 540 (1981)).  In cases involving employment termination, "[t]he pretermination process 'need not be elaborate' or approach the level of a 'full adversarial hearing.'"  *Otero v. Bridgeport Housing Auth.*, 297 F.3d 142, 151 (2d Cir. 2002) (quoting *Loudermill*, 470 U.S. at 545); *see also Faghri v. Univ. of Connecticut*, 621 F.3d 92, 99 (2d Cir. 2010) ("The requisite hearing is a minimal one.").  Nonetheless, "due process does require that before being terminated such an 'employee be given oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'"  *Otero*, 297 F.3d at 151 (quoting *Loudermill*, 470 U.S. at 546).

In this case, the hearing before the Village Trustees exceeded these minimal requirements.  As discussed above, Hubacz received adequate notice of the proceeding and the charge against him.  At the hearing itself, he was entitled to present evidence, examine and cross-examine witnesses, and offer legal arguments.

Although Hubacz contends that he was "denied a neutral adjudicator," ECF 64 at 20, there is no suggestion in the record that the Village Trustees were biased.  Even assuming bias, however, the Second Circuit has held that a neutral adjudicator

11

is not "a necessary component of due process at a pre-termination hearing" of a public employee where the employee is afforded an opportunity to argue, at a full post-termination hearing, that the "adjudicator was biased and prejudged the outcome." *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001).

The post-termination remedy in this case is Rule 75, which offers court review of governmental action "in the nature of certiorari, mandamus, or prohibition." Reporter's Notes to Vt. R. Civ. P. 75. This Court has found that Rule 75 is analogous to New York's Article 78, *see Brown v. Windham Northeast Supervisory Union*, 2006 WL 2548198, at *20-*21 (D. Vt. Aug. 31, 2006), which the Second Circuit has held satisfies the requirements of procedural due process. *See Giglio*, 732 F.2d at 1135. Moreover, the Second Circuit has held that a Vermont employee's "pre-termination hearing at which she was given the chance to put forth arguments and evidence as to why she should not be terminated," combined with the opportunity for Rule 75 review, constituted "adequate process." *Connolly v. City of Rutland*, 487 F. App'x 666, 667 (2d Cir. 2012).[2] Similarly here, in light of the substantial pre-termination proceeding held pursuant to Section 1932(a), combined with the Rule 75 opportunity for

---

[2] *See LaSala v. Bank of Cyprus Pub. Co., Ltd.*, 510 F.Supp.2d 246, 274 n.10 (S.D.N.Y. 2007) (finding an unpublished Second Circuit opinion "highly persuasive . . . and eminently predictive of how the Court would in fact decide a future case such as this one").

review, the Court finds no due process violation.  The Village's
motion for summary judgment on Hubacz's due process claim is
therefore GRANTED.

**III. Rule 75 Appeal**

 **A.   Standard of Review**

 "A court reviewing governmental action under Rule 75 is
typically limited to review of questions of law." *Garbitelli v.
Town of Brookfield*, 2011 VT 122, ¶ 6, 38 A.2d 1133, 1136.
"Review of evidentiary questions is limited to whether there is
any competent evidence to justify the adjudication." *Id.*
(citations omitted).  Under this deferential standard of review,
"it is not for the [reviewing] court to independently weigh the
evidence to make its own factual findings.  Rather, the
[reviewing] court on a Rule 75 appeal must uphold factual
findings if any credible evidence supports the conclusion by the
appropriate standard." *Turnley v. Town of Vernon*, 2013 VT 42, ¶
11, 71 A.3d 1246, 1251.  "The conclusions must, however, be
supported by the findings." *Id.*

 **B.   Procedural Claims**

 Hubacz brings two claims of procedural shortcomings under
Rule 75, specifically regarding notice.  Section 1932(a),
provides, in relevant part:

  Whenever it appears to the appointing authority **by its
  own knowledge or when informed by a written petition
  signed by one or more responsible persons** that any

> regular officer has become negligent or derelict in the
> officer's official duty, or is guilty of conduct
> unbecoming an officer, the appointing authority shall
> set a date for a hearing . . . .

Vt. Stat. Ann. tit. 24, § 1932(a) (emphasis added).  Hubacz
argues that the notice in this case was insufficient because
Shepeluk's letter (1) was not based upon his "own knowledge," and
(2) was not a "written petition signed by one or more responsible
persons."

As to Shepeluk's "own knowledge," Hubacz argues that the
notice was flawed because Shepeluk had no personal knowledge of
any wrongdoing sufficient to underlie a finding of negligence,
dereliction of duty, or conduct unbecoming an officer.  For
support, he cites *Town of Essex v. Bush*, 450 A.2d 1106, 1106 (Vt.
1982), which upheld the lower court's dismissal of a Section
1932(a) firing where the town manager "relied upon a formal
report submitted by the police chief as the basis for his
knowledge."  *Id.* at 1107 (Hill, J., dissenting).  In this case,
however, the charge, and thus the only relevant knowledge,
involved Kelly's decision to refuse to prosecute Hubacz's cases.
There is no dispute with respect to Shepeluk's knowledge of that
decision.

Hubacz next argues that absent the appointing authority's
"own knowledge," a written petition was required.  Because
Shepeluk's submission to the Village Trustees was, in fact, based
upon his knowledge of Kelly's determination, no written petition

14

was necessary.

### C.   Substantive Claim

Although notice of the charge against Hubacz was adequate, the question remains whether that charge, if proven, was sufficient for a finding of negligence, dereliction of duty, or conduct unbecoming an officer.  The Trustees made no findings of specific misconduct.  Indeed, their ruling was based entirely upon Kelly's decision, and the impact of that decision upon Hubacz's ability to carry out his functions as a police officer. The Court must therefore determine whether Kelly's decision, effectively barring Hubacz from performing his job, provided sufficient grounds for termination under Section 1932(a).

The most recent Vermont Supreme Court case construing Section 1932 is *Turnley*, in which a town selectboard found that its police chief made inaccurate statements at public meetings about when he became aware of a sex offender's residence, and why he did not share his knowledge with the community.  2013 VT 42, ¶ 1, 71 A.3d at 1248.  The selectboard fired the chief under Section 1932(a) and the superior court reversed.  The Vermont Supreme Court affirmed the lower court's ruling, concluding that the chief's failure to publicly disseminate information

> could not, in and of itself, constitute dereliction
> under 24 V.S.A. § 1932(a) because it does not implicate
> the performance of a specific duty. . . .  As we have
> observed, the Board premised its conclusion on the
> chief's misstatements and not on the actual failure to
> inform the community of the offender's residence, which

15

he was apparently under no legal duty to do so.

Nor would simple misstatements without intent to
mislead constitute conduct unbecoming a law enforcement
officer under 24 V.S.A. § 1932 in circumstances such as
these, where the misstatements themselves—*rather than
negligent job performance*—constitute the alleged cause
for firing.

*Id.* at ¶¶ 15-16, 71 A.3d at 1252 (emphasis added).

The *Turnley* decision also provided guidance as to what might
constitute conduct unbecoming an officer, drawing heavily upon
the New Hampshire Supreme Court's interpretation of a similar
state statute:

[T]he New Hampshire court's inquiry has been guided by
reference to several, interrelated considerations.
Among those considerations is the obvious requirement
that the complained-of misdeeds must have a direct
bearing on law enforcement officers' ability to carry
out their jobs.

*Id.* at ¶ 18, 71 A.3d at 1253.  The Village cites this guidance to
argue that the Village Trustees properly based their decision
upon Hubacz's inability to perform his job.  *Id.*  The Village's
reply memorandum further highlights the reputational aspect of
Hubacz's situation, relying upon the following dicta in *Turnley*:

We have no difficulty agreeing with the Town's
reasonable argument that lying and a reputation for
dishonesty would compromise a police chief's ability to
carry out his official duties.  A reputation for
dishonesty also would diminish public respect in a way
that would bear on departmental morale.

*Id.* at ¶ 19, 71 A.3d at 1254.

The Village's heavy reliance upon *Turnley* is nonetheless
misplaced.  *Turnley* focused upon specific actions by the police

16

chief, including alleged misstatements, the chief's state of
mind, and whether his actions rose to the level of misconduct
contemplated by Section 1932(a). *Turnley* also endorsed the New
Hampshire Supreme Court's conclusion that any alleged misconduct
must be "'of substantial significance,'" such as corruption or
the commission of a crime resulting in imprisonment. *Id.* at ¶
18, 71 A.3d at 1254 (citation omitted). In this case, there was
no "specific finding" of deliberate misconduct, much less conduct
of substantial significance. *Id.* at ¶ 19, 71 A.3d at 1254.
While the Village asks the Court to assume misconduct, *Turnley*
specifically discouraged the assumption of facts necessary to
meet the standard for termination. *Id.* at ¶ 13, 71 A.3d at 1252
("We are invited instead to assume that such a finding [of mental
state or intent] was made in support of the Board's ultimate
decision . . . . We decline to do so.").

    Rather than finding specific misconduct, the Trustees
concluded that Hubacz was unable to perform his job. This
inability, they reasoned, constituted dereliction and conduct
unbecoming an officer. Section 1932, however, entitled
"Negligence of officer; suspension; hearing," clearly
contemplates officer misconduct. Instead of reviewing the
officer's actions, the Trustees considered the actions of a third
party that *impacted* the officer. Nothing in Section 1932
suggests that such third-party conduct is a valid basis for

termination under its terms.

The Village argues that Hubacz had to be terminated because he suffered from a legal disability: the inability to do his job. It also proceeded under Section 1932(a), which sets forth no provision for disabilities.  Had the Vermont Legislature intended to include inability, incapacity, or any other form of disability as grounds for termination under Section 1932(a), it would have done so.  *See Comm. to Save the Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc.*, 400 A.2d 1015, 1021 (Vt. 1979) ("This Court must presume that all language in a statute was drafted advisedly, and that the plain ordinary meaning of the language used was intended."); *Benson v. MVP Health Plan, Inc.*, 2009 VT 57, ¶ 4, 978 A.2d 33, 35 (in construing a statute, a court presumes that "'the Legislature intended the plain, ordinary meaning of [the] statute.'" (citation omitted)).

The Village seeks to carry Section 1932(a) beyond its plain language in an effort to encompass the facts of this case, urging the Court not only to read the statute broadly, but also to assume misconduct.  A fair reading of the statute, as well as Vermont Supreme Court precedent, counsels otherwise.  The Court therefore finds that the Trustees' factual findings did not support their ruling under Section 1932 and that Hubacz is entitled to judgment as a matter of law on his Rule 75 challenge.

Rule 75 provides that "[t]he judgment of the court shall

affirm, reverse, or modify the decision under review as provided by law." Vt. R. Civ. P. 75(d).  Where there are deficiencies in the factual record, a court may order a remand.  *See In re D'Antonio*, 2007 VT 100, ¶ 8, 939 A.2d 493, 496 (interpreting terms "reverse or modify" in Rule 75(d) as including power to remand); *Burroughs v. W. Windsor Bd. of Sch. Dirs.*, 446 A.2d 377, 379–80 (Vt. 1982) (interpreting Rule 75 to include power to remand).  Because the Court finds that additional facts regarding Hubacz's conduct are required to satisfy the Section 1932(a) standard, this matter is remanded to the Village of Waterbury Trustees for the consideration of such facts.

The matter is also remanded to the Trustees for reconsideration of whether, in fact, recourse for termination of a police officer is limited to Section 1932.[3]  As the Village properly notes, Hubacz essentially suffers from a legal disability insofar as he is unable to effectively perform the functions of his job.  In *Gadue v. Village of Essex Junction*, 336 A.2d 182 (1975), the Vermont Supreme Court held that in the event a physical disability, an officer could be terminated for "cause" under Vt. Stat. Ann. tit. 24, § 1931.  In so holding the court

---

[3] Vermont law states that Sections 1931-33 of Title 24 control "unless a municipality has charter provisions providing for tenure of police officers during good behavior with removal only after hearing and for cause."  Vt. Stat. Ann. tit. 24, § 1934.  There is no indication in the record that the Village of Waterbury had such a provision in its charter.

reasoned that "[t]he detriment to the public which would result from the lack of authority to discharge a physically disabled policeman is itself a sound basis for concluding that physical disability may be 'cause' for dismissal.  Denial of this authority would constitute an unreasonable result which we will not presume that the Legislature intended." *Gadue*, 336 A.2d at 183 (citation omitted).  This same reasoning may apply here with regard to Hubacz's legal, functional disability.

### CONCLUSION

For the reasons set forth above, the Village's motion for summary judgment (ECF 56) on Hubacz's due process claim is GRANTED, and its motion for summary judgment on the Rule 75 appeal is DENIED.  Hubacz's cross-motion for summary judgment (ECF 64) on his Rule 75 appeal is GRANTED, and this matter is REMANDED to the Trustees of the Village of Waterbury for further proceedings.[4]

Dated at Burlington, in the District of Vermont, this 15th day of April, 2014.

/s/ William K. Sessions III
William K. Sessions III
United States District Judge

---

[4] Any questions with respect to compensation may be presented to the Village Trustees for their consideration.  The Court offers no opinion with respect to Hubacz's legal entitlement to back pay, damages, or attorney's fees.